**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ANDREW BURKE,

                              Plaintiff,

          - v -                                                    Civ. No. 3:17-CV-24
                                                                          (DJS)

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY[1],

                              Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LACHMAN & GORTON | PETER A. GORTON, ESQ. |
| Attorney for Plaintiff | |
| 1500 East Main Street | |
| P.O. Box 89 | |
| Endicott, New York 13761-0089 | |
| | |
| GRANT JAQUITH, ESQ | ANDREEA LECHLEITNER, ESQ. |
| Acting United States Attorney | Special Assistant U.S. Attorney |
| Attorney for Defendant | |
| Office of United States Attorney | |
| 100 South Clinton Street | |
| P.O. Box 7198 | |
| Syracuse, New York 13261 | |

**DANIEL J. STEWART**
**United States Magistrate Judge**

### MEMORANDUM-DECISION and ORDER[2]

In this action, Plaintiff Andrew Burke moves, pursuant to 42 U.S.C. § 405(g), for

review of a decision by the Commissioner of Social Security denying his application for

---

[1] Nancy A. Berryhill became Acting Commissioner of Social Security on January 23, 2017. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this suit.

[2] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 5 & General Order 18.

Supplemental Security Income ("SSI").  Presently pending are Plaintiff's and Defendant's

Motions for Judgment on the Pleadings pursuant to this Court's General Order 18.  Dkt Nos.

9 &10.  Based upon the following discussion, Plaintiff's Motion for Judgment on the

Pleadings is **denied** and Defendant's Motion for Judgment on the Pleadings is **granted**.  The

Complaint, therefore, is dismissed.

## I.  BACKGROUND

Plaintiff, born on July 24, 1969, filed his application for SSI on August 15, 2013.  Dkt.

No. 8, Admin. Tr. (hereinafter "Tr.") at pp. 161-169.  Plaintiff's application listed a disability

onset date of June 1, 2006.  Tr. at p. 162.  That onset date was later amended to be August

1, 2013.  Tr. at p. 78.  At his administrative hearing, Plaintiff's stated basis for disability was

anxiety and depression.  Tr. at p. 71.  Plaintiff has a high school education and his past work

experience includes stock person, fast food worker, and delivering newspapers.  Tr. at pp.

64 & 222.  Plaintiff's applications were denied on initial review.  Tr. at pp. 95-102.  On May

28, 2015, a Hearing was held before Administrative Law Judge ("ALJ") Robert E. Gale, at

which Plaintiff, who was represented by counsel, testified.  Tr. at pp. 57-79.  On June 25,

2015, ALJ Gale issued an unfavorable decision finding Plaintiff not disabled.  Tr. at pp. 10-

23.  On November 29, 2016, the Appeals Council concluded there was no basis to review

the ALJ's decision, thus rendering the ALJ's decision the final determination of the

Commissioner.  Tr. at pp. 1–6.  This action followed.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied.  *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Succinctly defined, substantial evidence is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  "To determine on appeal whether an [Administrative Law Judge's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex. rel. Williams v. Bowen*, 859 F.2d at 258.

The Administrative Law Judge must set forth the crucial factors supporting the decision with sufficient specificity.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record.  *Williams ex rel. Williams v. Bowen*, 859 F.2d

at 258; 42 U.S.C. § 405(g).  However, where the weight of the evidence does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed.  *Johnson v. Bowen*, 817 F.2d at 986.

## B.  Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations.  20 C.F.R. § 416.920.[3]  At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity."  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends.  20

---

[3] The Court notes that several of the regulations governing social security cases were recently amended or rescinded.  *See, e.g.*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (F.R. Jan. 18, 2017); 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016).  These new rules generally only apply to claims filed either on or after January 17, 2017 or March 27, 2017, depending on the regulation.  *Id*.  In announcing these changes, the Social Security Administration specifically stated its intention that courts would apply those rules that were in effect at the time the ALJ issued their decision.  *See, e.g.*, 81 Fed. Reg. 66138-01, fn.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.")  Thus, any cites (unless otherwise noted) will be to the regulations that are applicable to claims, such as this one, that were filed and decided prior to the changes.

C.F.R. § 416.920(b).  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations.  20 C.F.R. § 416.920(d).  The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience.  *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity.  *Id.*  If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[4] to perform his or her past relevant work despite the existence of severe impairments.  20 C.F.R. § 416.920(e).  If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy.  *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four).  *Berry v. Schweiker*, 675 F.2d at 467.  If the claimant meets that burden, the burden then shifts to

---

[4] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations."  20 C.F.R. § 416.945(a).

the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

## C. ALJ Gale's Findings

Using the five-step disability evaluation, ALJ Gale found that: (1) Plaintiff has not engaged in any substantial gainful activity since August 15, 2013, the date of the SSI application; (2) Plaintiff has the following severe impairments: a depressive disorder, an anxiety disorder, and a personality disorder; (3) Plaintiff's impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulations; (4) Plaintiff retains the RFC to perform a full range of work at all exertional levels, subject to certain limitations and restrictions; and (5) Plaintiff could return to his past relevant work or, in the alterative, considering his age, education, work experience, and his RFC, Plaintiff could perform work available in the national economy and was therefore not disabled. Tr. at pp. 10-23.

### D.  Contentions of the Parties

Plaintiff contends that the ALJ's determination must be reversed for a number of reasons including: (1) the ALJ's rejection of medical opinions in favor of his own; (2) the ALJ's RFC determination failed to assess a number of Plaintiff's workday limitations; (3) the ALJ failed to properly assess Plaintiff's ability to relate to others; (4) the ALJ failed to properly assess Plaintiff's ability to handle stress; (5) the ALJ improperly failed to consider a statement from a social services caseworker; and (6) the ALJ improperly found that Plaintiff could perform past work or, alternatively, could do other work available in the national economy.  Dkt. No. 9, Plaintiff's Memorandum of Law ("Pl.'s Mem. of Law") at pp. 12-25.  Defendant asserts that the ALJ exercised appropriate discretion in according weight to the various medical opinions and that the medical and other evidence in the record provided substantial evidence for the ALJ's decision regarding Plaintiff's functional capacity and ability to work.  Dkt. No. 10, Defendant's Memorandum of Law ("Def.'s Mem. of Law") at pp. 5-25.

### E.  Analysis

#### 1. The ALJ's Assessment of Medical Opinion Evidence

Plaintiff contends that the ALJ improperly assessed the three medical opinions in the record.  Pl.'s Mem. of Law at pp. 12-13 & 18-23.  Plaintiff's argument is that the ALJ inappropriately placed too great a reliance on Dr. Tammy Inman-Dundon's assessment of Plaintiff's functional abilities while failing to accord proper weight to the opinions of Drs.

Cheryl Loomis and Adam Krantweiss.  Pl.'s Mem. of Law at pp. 18-23.  Upon a review of the record, these arguments afford no basis on which to disturb the ALJ's assessment of the relevant medical opinions.

The Regulations require that every medical opinion, regardless of its source, be considered and weighed.   20 C.F.R. § 416.927(c).  The "ALJ has the discretion to give certain medical opinions more weight than others."  *Thogode v. Colvin*, 2015 WL 5158733, at *9 (N.D.N.Y. Sept. 2, 2015) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)).  In deciding what weight, if any, an ALJ should accord to medical opinions, he may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. § 416.927).  The Regulations require the ALJ "to explain the weight he has chosen to give to each medical opinion." *Peryea v. Comm'r of Soc. Sec.*,, 2014 WL 4105296, at *9 (N.D.N.Y. Aug. 20, 2014).  In the present case, there is no question that the ALJ specifically explained his basis for the varying weight he afforded to each of the three medical opinions.

None of these medical opinions was issued by a Doctor with a treating relationship with Plaintiff.  With respect to Dr. Inman-Dundon, the ALJ gave her opinion significant weight "due to her programmatic expertise and the relative consistency of her opinions with the longitudinal medical evidence." Tr. at p. 20.  Per the Regulations, State agency medical

consultants, such as Dr. Inman-Dundon, are "highly qualified" individuals "who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(I). This provides an appropriate basis for giving their views more weight. *Merritt v. Colvin*, 142 F. Supp. 3d 266, 274 (N.D.N.Y. 2015). For the reasons set forth below, the ALJ's finding that Dr. Inman-Dundon's opinion was consistent with the medical record is well supported in the record.

The ALJ also acted within his discretion in affording less weight to the other medical opinions. In the ALJ's view, Dr. Loomis' opinion was entitled to reduced weight in part because her single examination of the Plaintiff occurred at a time when he was undergoing an exacerbation of symptoms after which the record evidence shows significant improvement. This provided a legitimate basis for affording Loomis' opinion less weight. *Hockensmith v. Astrue*, 906 F. Supp. 2d 319, 329-330 (D. Del. 2012). Additionally, Dr. Loomis' opinion was based in large part on self-reports of Plaintiff's condition. Tr. at p. 20. "A source's reliance on a claimant's subjective reports rather than the medical evidence constitutes a good reason for affording less weight to a medical opinion." *Merkley v. Comm'r of Soc. Sec.*, 2017 WL 4512448, at *4 (N.D.N.Y. Oct. 10, 2017) (citing cases).

The ALJ also explained that Dr. Krantweiss' opinion was given less weight in part because of a statement in his report that Plaintiff was "not able to do sustained work-related physical or mental activities" despite not having conducted a physical examination of Plaintiff. Tr. at p. 21 (citing to Tr. at p. 562). This fairly raised questions about this opinion.

Dr. Krantweiss also offered seemingly inconsistent assessments of Plaintiff's ability to relate to stress in the workplace - finding that he would be unable to meet competitive standards for dealing with stress involving unskilled work, but that he had a "limited but satisfactory" ability to deal with the stress of semiskilled and skilled work.  Tr. at pp. 564-565.

For these reasons, "the Court finds that the ALJ applied the correct legal standards and offered sufficient reasons to support [his] weighing of the medical opinions. Accordingly, the Court declines to disturb the Commissioner's weighing of the conflicting evidence in this case." *Dodoo v. Colvin*, 2016 WL 2851331, at *5 (N.D.N.Y. May 13, 2016) (citing *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)) (internal citation omitted).

### 2. The ALJ's RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1).  In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id.*  If the applicant's RFC allows him to perform the kind of work he performed in the past, he is deemed not to be disabled. 20 C.F.R. § 416.920(f).  "It is well-established that the ALJ has both the ability and the responsibility to resolve conflicts in the evidence and to weigh all of the available evidence to make an RFC finding that is consistent with the record as a whole." *Doty v. Comm'r of Soc. Sec.*, 2017 WL 4621630, at *6 (N.D.N.Y. Oct. 13, 2017) (quoting

*Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013)); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

ALJ Gale concluded that Plaintiff had a RFC to "perform a full range of work at all exertional levels." Tr. at p. 16. Plaintiff does not take exception to this finding. The ALJ did recognize certain limitations on Plaintiff's ability work based on psychological factors. The ALJ found that Plaintiff:

> retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with others in order to carry out simple tasks, handle work-related stress in that he is able to make decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require the [Plaintiff] to supervise or manage the work of others.

Tr. at p. 16. In reviewing the various component aspects of this RFC finding, the record amply supports the ALJ's conclusions. As to several of these findings there was no disagreement among the various medical opinions. On the ability to understand and following simple instructions Dr. Inman-Dundon found that Plaintiff was "not significantly limited," Tr. at p. 88, Dr. Loomis found "no impairment," Tr. at p. 469, and Dr. Krantweiss identified Plaintiff's ability as "unlimited or very good." Tr. at p. 564. Dr. Loomis found "no impairment" in Plaintiff's ability to perform simple tasks or his ability to maintain attention and concentration. Tr. at p. 469. Dr. Krantweiss found Plaintiff's ability to perform simple tasks "unlimited or very good" and made a similar finding regarding Plaintiff's ability to maintain attention, though he limited that finding to two-hour periods. Tr. at p. 564. Dr.

Inman-Dundon found no significant limitation regarding the performance of simple tasks and only moderate limitation in concentration and attention. Tr. at p. 88. Given this consensus, the ALJ's findings in this regard are clearly supported by substantial evidence. *Perry v. Comm'r of Soc. Sec.*, 2017 WL 5508775, at *6 (N.D.N.Y. Jan. 23, 2017), *aff'd sub nom.*, *Perry v. Berryhill*, 2017 WL 7693048 (2d Cir. Feb. 16, 2017) (consistency among medical opinions provides substantial evidence).

Plaintiff makes several particularized objections to the ALJ's RFC determination claiming that it failed to properly assess Plaintiff's ability to (1) maintain a regular schedule, sustain an ordinary routine, and complete a normal workday or week without interruptions; (2) relate to others; and (3) handle stress. Pl.'s Mem. of Law at pp. 16-18. As to each, Plaintiff relies primarily on Dr. Krantweiss' report of Plaintiff's ability. *Id.* To be sure, that report suggests that Plaintiff's functional limitations are significant. In reaching his RFC determination, however, the ALJ cannot rely on one report and must consider the total record. *Williams v. Colvin*, 2014 WL 4146191, at *7 (N.D.N.Y. Aug. 19, 2014) ("In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record"). A review of the record shows that the ALJ's consideration regarding the factors raised here by Plaintiff were supported by substantial evidence.

First, it is important to recognize, as did the ALJ, that a significant portion of the evidence in the record predates Plaintiff's application for benefits. *See* Tr. at p. 18. It was exclusively this evidence and Plaintiff's own reports that Dr. Loomis had available in

rendering her opinions.  The record after the application shows significant improvement. Plaintiff's girlfriend died in July 2013.  Tr. at pp. 253 & 417.  In the months following her death, Plaintiff experienced significant mental health issues resulting in several hospitalizations for psychological treatment.  Tr. at p. 559.  After March 2014, however, Plaintiff has shown continued positive progression in his mental status.  His condition stabilized and he and his providers have consistently reported that he is doing well in outpatient counseling and with his current medication regime.

In April 2014, Plaintiff reported no complaints and indicated he was symptom free. Tr. at p. 506.  Over the course of the following months, Plaintiff maintained regular attendance at appointments with treating providers and routinely reported that he was in good spirits, doing well and able to manage his daily living activities with no difficulties.  Tr. at pp. 409-505. In November 2014, it was reported that Plaintiff "is functioning steadily in the community."  Tr. at p. 526.  While Plaintiff claims to have difficulty being around people, at the administrative hearing he testified that he travels to the local library six days a week and often spends four or five hours a day there.  Tr. at pp. 73-74.  While he discussed a level of frustration with others at the library, he has worked with treatment providers to develop strategies for dealing with those situations.  Tr. at pp. 502, 527 & 553.  This level of activity demonstrates an ability to function in a workplace environment around others.  *Romano v. Colvin*, 2014 WL 347273, at *5 (N.D.N.Y. Jan. 30, 2014).  Additionally, when the library was scheduled to be closed for a period of time, Plaintiff demonstrated his ability to adapt

*-13-*

to changes in his routine by making different plans during that time.  Tr. at p. 503.

After a switch in medical providers in January 2015, reports of Plaintiff's condition remained positive.  On February 6, 2015, his mood was noted to be "positive" and he reported that he was "doing better" than in the past at handling an upcoming anniversary he would have shared with his former girlfriend.  Tr. at p. 549.  He also reported new social contacts.  *Id*.  Several weeks later his treating provider reported that he was in "good spirits" and that he had worked on processing and managing the irritants in his life.  Tr. at p. 550. In March he was "doing well" and had a positive "mood."  Tr. at p. 551.  There were no signs in these months of any danger to himself.  Tr. at pp. 409-555.  He reported a stable home life. Tr. at p. 554.

The record contains evidence of global assessment of functioning ("GAF")[5] scores for Plaintiff of 75 in January, April, and July 2014 and 70 in November 2014.  Tr. at pp. 526, 527, 529 & 531.  While GAF scores are just one part of the record and are certainly not dispositive of a lack of disability, the ALJ properly considered them in assessing the consistency of treating medical reports with Plaintiff's potential RFC.  A GAF score of 70 suggests that the individual is "generally functioning pretty well, has some meaningful interpersonal relationships."  *Kohler v. Astrue*, 546 F.3d at 262 (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.2000)).  The score of 75 "equates to symptoms that are transient and expected reactions to pyschosocial stresses

---

[5] The GAF is a scale promulgated by the American Psychiatric Association to assist "in tracking the clinical progress of individuals [with psychological problems] in global terms."  *Kohler v. Astrue*, 546 F.3d 260, 262 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.2000)).

and no more than a slight impairment in social, occupational or school functioning." *Mix v.*
*Astrue*, 2010 WL 2545775, at *5 n. 2 (W.D.N.Y. June 18, 2010) (quoting American
Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed.2000)).
Here, given Plaintiff's arguments concerning his ability to relate to others it was reasonable
for the ALJ to consider this information which showed positive, relatively long-term ability
to manage social interactions. This, taken together with Plaintiff's level of daily activities,
provides substantial evidence supporting the ALJ's finding that Plaintiff could "relate to and
interact appropriately with others." Tr. at p. 16.

It is also not correct to say that the ALJ failed to consider Plaintiff's ability to deal
with other people or stress in assessing Plaintiff's RFC and ability to work. The ALJ
specifically took note of Plaintiff's purported limitations in these areas. Tr. at pp. 16-18. He
went on to note, however, that the evidence suggested that those issues were manageable.
*Id.* Plaintiff himself testified that his symptoms had improved over time and that he was
managing his anxiety and depression well at the time of the hearing. Tr. at pp. 71-72.

Concerning Plaintiff's ability to handle workplace stress, Plaintiff relies almost
exclusively on Dr. Krantweiss' assessment that if placed in a stressful situation Plaintiff
would likely decompensate. Tr. at p. 562. The ALJ reasonably concluded, however, that
Plaintiff's medical record did not support this conclusion. Plaintiff routinely ventures to the
public library six days a week where he encounters members of the general public. He
admittedly has some frustrations and negative encounters with individuals, but has also

successfully developed strategies for dealing with those situations.  Tr. at pp. 502, 527 & 553.  Nothing in the record suggests that work as a store laborer would be any more stressful or that Plaintiff would be any less successful in managing those situations.

Plaintiff is correct that the ability to deal with stress is an individualized question that is not automatically addressed by finding him able to do unskilled work.  Pl.'s Mem. of Law at p. 18.  Plaintiff's subsequent hypotheticals regarding unskilled work that could create stressful situations, however, fail to cite to the Court any specific evidence as to how the ALJ's findings fail to address Plaintiff's individual circumstances.  The only other evidence Plaintiff cites is testimony at a prior administrative hearing nearly five and a half years prior to the hearing and decision under review here.  Tr. at pp. 36, 39-40.  Given the contemporaneous evidence that Plaintiff had significantly progressed from that time, particularly in developing strategies for and actually dealing with stressful situations, *see, e.g.*, Tr. at pp. 527 & 555, it was not error for the ALJ to conclude that Plaintiff would be able to manage should some stressful situations present themselves at work.

Plaintiff's final point is that the ALJ erred in finding he was not disabled given the limitations noted regarding his ability to keep and maintain a schedule.  Pl.'s Mem. of Law at pp. 13-16.  While Drs. Loomis and Krantweiss found significant limitations in this area, Dr. Inman-Dundon found only a moderate limitation.  Tr. at pp. 88, 469, & 564.  "The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work."  *Flake v.*

*Comm'r of Soc. Sec.*, 2016 WL 7017355, at *10 (N.D.N.Y. Nov. 10, 2016), *report and recommendation adopted*, 2016 WL 7017396 (N.D.N.Y. Dec. 1, 2016) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)).   "Moderate limitations in a few of the abilities and aptitudes associated with unskilled work do not rise to the level of a "substantial loss" in the ability to perform the demands outlined in SSR 85–15."  *Roach v. Colvin*, 2013 WL 5464748, at *16 (N.D.N.Y. Sept. 30, 2013) (citing cases); *see also Lowry v. Comm'r of Soc. Sec.*, 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017), *report and recommendation adopted*, 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017) (existence of "moderate limitation in his ability to maintain a schedule would not be inconsistent with the ALJ's RFC determination that Plaintiff could perform simple, routine work").  The ALJ's finding in this regard is bolstered by the fact that Dr. Krantweiss', upon whom Plaintiff relies so heavily, found Plaintiff's ability to perform simple tasks "unlimited or very good."  Tr. at p. 564.

The ALJ's RFC determination that Plaintiff could do prior work as a laborer was supported by the undisputed evidence in the record that Plaintiff had the physical ability to do the work in this classification and that he had done so in the past.  His prior work did not require him to supervise workers, which while not completely eliminating interaction with others does, contrary to Plaintiff's assertions, necessarily limit his required interactions.  The lack of supervision also means less responsibility and less stress in having to deal and interact with others.  Moreover, in Plaintiff's prior work history as a store laborer, the evidence showed only one incident of difficulty with others in over three years of work at Walmart.

Tr. at p. 222. The laborer position involves unskilled work. Tr. at p. 22. Agency guidance materials identify such work as "dealing primarily with objects, rather than with data or people." SSR 85–15, 1985 WL 56857, at *4. By its nature, then, such work will have inherently less personal interaction than other positions.

### 3. The ALJ's Failure to Consider of a Statement of a Caseworker

Plaintiff objects that the ALJ improperly failed to address the statement in the record from Michelle Stimak, Plaintiff's caseworker with the Broome County Department of Social Services. Pl.'s Mem. of Law at pp. 23-24. Plaintiff is correct that an employee of a "public . . . social welfare agency" is deemed an "other source" whose opinion is contemplated by the regulations. 20 C.F.R. § 416.913(d)(3). The language of the regulation is permissive indicating only that an ALJ "*may* also use evidence" from such a source. *Id.* (emphasis added). As a result, the ALJ was not required to give Ms. Stimak's opinion any weight. *Desmond v. Astrue*, 2012 WL 6648625, at *9 (N.D.N.Y. Dec. 20, 2012).

### 4. Plaintiff's Ability to Perform Past Work

Plaintiff finally contends that the ALJ erred in concluding that he could perform his past relevant work as a store laborer. Pl.'s Mem. of Law at p. 24. Plaintiff's argument focuses on the ALJ's alleged failure to address the extent to which his past work involves dealing with people and addressing stress, with which he claims to have significant difficulties. *Id.* Plaintiff "bears the burden of demonstrating his inability to perform any past relevant work." *Hemion v. Astrue*, 2008 WL 833961, at *12 (N.D.N.Y. Mar. 27, 2008). For

the reasons set forth above, the ALJ's decision did consider Plaintiff's ability to handle stress and deal with others.  Those findings are supported by substantial evidence.  As a result, Plaintiff failed to meet his burden of showing that he could not perform this work. Considering this finding, Plaintiff's assertion that expert testimony was required is rejected since such evidence is not needed for the Step Four past work determination when the ALJ's finding is supported by substantial evidence. *Stanton v. Astrue*, 370 Fed. App'x 231, 235 (2d Cir. 2010); *Hemion v. Astrue*, 2008 WL 833961, at *12; 20 C.F.R. § 416.960(b).[6]

### III.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff SSI benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

---

[6] Given the Court's conclusion that the ALJ properly found that Plaintiff could perform his past relevant work, there is no need to consider the ALJ's alternative holding that Plaintiff could perform other work.

**ORDERED** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

**SO ORDERED.**

Date:   March 21, 2018
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge